227 F.2d 945
 J. R. FOREE, doing business as Foree Construction Company; and Western Casualty and Surety Company, Appellants,
v.
TRI-COUNTY ELECTRIC ASSOCIATION, Inc., a corporation, Appellee.
 No. 5097.
 United States Court of Appeals Tenth Circuit.
 November 25, 1955.
 
 A. G. McClintock, Cheyenne, Wyo. (Clyde C. Goebel, Kansas City, Mo., was with him on the brief), for appellants.
 Carleton A. Lathrop, Cheyenne, Wyo. (Otis Reynolds, Sundance, Wyo., and Carl L. Lathrop, Cheyenne, Wyo., were with him on the brief), for appellee.
 Before BRATTON, MURRAH and PICKETT, Circuit Judges.
 MURRAH, Circuit Judge.
 
 
 1
 Appellant, J. R. Foree, instituted this action to recover the balance due under his contract for the construction of an electrical transmission line for appellee, Tri-County Electric Association, Inc.; and to recover damages for lost profits resulting from the breach of a covenant to timely deliver poles for the construction of the transmission line. Western Casualty and Surety Company, as assignee of amounts due Foree from Tri-County, was joined as party plaintiff.
 
 
 2
 Tri-County asserted a set-off against Foree in the amount of $8,822.32 for materials furnished and not used in the performance of the work under the contract. And it denied any covenant to furnish poles within a stipulated time in contradiction of their original written contract specifically relieving Tri-County of any liability because of delays in the progress of the work.
 
 
 3
 In entering judgment for the plaintiffs on the first cause of action, the court credited Tri-County with $5,100 as a set-off, based upon a specific finding to the effect that Foree had admitted and agreed with Tri-County's engineering representative that he had received excess materials in that amount not used in the construction of the transmission line. On the second cause of action the court determined that Tri-County specially covenanted with Foree to furnish twelve carloads of poles per week as a material inducement for the execution of an amendment to his contract with Tri-County for the construction of additional miles of transmission line, and that this covenant was not qualified by the provisions of the original contract between the parties. The court dismissed the second cause of action, however, concluding that although the evidence showed delays in the deliveries of the poles under the covenant, Foree nevertheless failed to prove any damages resulting from the failure to timely deliver; that the delays in the construction of the transmission line leading to increased construction costs were occasioned by the failure of Foree's machinery on the job, the condition of the terrain and the weather, and the further significant fact that one of Foree's crews had left the project for a period of approximately two months during the course of construction.
 
 
 4
 The sole question on appeal by Foree and his surety company is the sufficiency of the evidence (1) to show an admission or agreement by Foree that he owed $5,100 to Tri-County for materials not used in the construction work, and (2) to sustain the dismissal of the claim for lost profits.
 
 
 5
 The credit allowance of $5,100 by the trial court to Tri-County was based upon the direct testimony of W. H. Nixon of the engineering firm representing Tri-County, to the effect that in a conference at the home office of Tri-County in Sundance, Wyoming, on September 27, 1951 between him, Foree and the materials and work clerk of Tri-County, Foree agreed to a negotiated figure of $5,100 in settlement of the account for materials charged out to him and not used in the project. The conference was held in an attempt "to come to some settlement on final papers so that the job could be closed out." Nixon stated that "we made numerous efforts to settle this matter because we do not get paid until the job is finished out. We wrote numerous letters to Foree and then to the bonding company trying to make arrangement to meet them and settle this problem."
 
 
 6
 Foree recalled the conference at Sundance, but denied knowledge of any agreement regarding the charge-out account. On appeal he suggests that the letters referred to by Nixon were written after the Sundance conference and by their tenor irrefutably negated any final settlement at the Sundance conference on September 27, 1951; that instead they unequivocally showed that negotiations were continued for a period of a year and a half in an effort to finally settle the amount of materials charged to his account and not used in the project. He points to the failure of Tri-County to plead any agreement on an amount of $5,100 in its answer, but that instead Tri-County asserted a set-off of $8,822.32 for materials charged to Foree.
 
 
 7
 A careful review of the letters reveals that on November 15, 1951 less than two months after the Sundance conference, Tri-County's manager wrote to the casualty company stating that Foree owed Tri-County approximately $5,800 for materials. On February 18, 1952, the attorney for the casualty company wrote Tri-County's manager that they were awaiting the result of an audit and that they hoped Tri-County would be able to furnish some advice as to the location of the materials charged against Foree "which he feels should not have been charged to him"; that they would contact Tri-County again when they had been advised when the situation as to the audit and the material account had been completed. On April 1, 1952 Tri-County's manager advised the casualty company's attorney that Foree's material account had been increased and that they had instructed their engineer to complete the final papers "with this additional included." On June 2, 1952 the attorney for the casualty company wrote the attorney for Tri-County that "The Western Casualty & Surety Company and Mr. Foree disagree with the deduction which you have itemized and it is our intention within the next two or three weeks to come to Sundance to check the material reimbursement account with you in order that we may satisfy ourselves of the deductions made." On August 1, 1952, H. S. Nixon of the engineering company wrote the attorney for the casualty company recalling a conference with Foree in Sundance on September 12, 1951; that between that date "and the present time we have had a number of conferences, both in Sundance and in this office, much correspondence and some telephone calls to your office and with Mr. Foree in an effort to close out this project," and urged that "the matter of the closing out of this project should not be allowed to drag any longer." And again on October 30, 1952 Nixon wrote the casualty company's attorney urging the early closing of the project. On November 6, 1952 the casualty company attorney wrote Nixon stating that he and Mr. Foree considered "the final papers submitted to be unacceptable" and that he and Mr. Foree expected to check further regarding materials and items of damage with Tri-County. On November 7, 1952, Nixon wrote the casualty company attorney urging a conference at an early date stating that "we know of the differences but the very purpose of your proposed conference was to discuss and try to settle said differences." And on February 23, 1953, Nixon wrote Foree suggesting that Foree meet with Tri-County in Sundance with all interested parties present to "settle all questions covering the amount of materials charged to you, as this is entirely a matter of book-keeping, and if there are any errors, same can be corrected and adjusted."
 
 
 8
 All of this correspondence occurred subsequent to the alleged Sundance agreement of September 27, 1951. And while Nixon was one of the principal participants in the correspondence it is significant, we think, that neither he nor any other of the correspondents ever suggested that a settlement had been reached. Indeed the record is barren of any evidence of a settlement until Mr. Nixon reached the witness stand. And while we accord great weight to the finding of the trial court, especially when it is supported by some evidence, we are convinced from the whole record that the parties did not enter into a settlement or agreement concerning the amount of materials charged to Foree and not used in the project, and that the trial court's findings in that regard are clearly erroneous. United States v. Waymire, 10 Cir., 202 F.2d 550. Indeed we are convinced that the failure of the parties to agree upon this issue is the primum mobile of the first claim. The court, not having made any findings on the question of material charge outs, the first claim must be remanded for that purpose.
 
 
 9
 On the claim for loss of profits there was evidence to the effect that the failure to receive the poles at the rate of twelve carloads per week resulted in greatly increased construction costs. But there was also positive proof that the shortage of poles was not the cause of the delays in the progress of construction but that the delay was caused by inefficient management, defective equipment, inadequate manpower, the condition of the terrain, and the weather. Certainly the proof presented a question of fact which the trial court had the province to decide. Its findings in that regard are not clearly erroneous and its judgment thereon is affirmed.
 
 
 10
 PICKETT, Circuit Judge (dissenting).
 
 
 11
 The issues presented in this appeal are pure questions of fact. It would serve no useful purpose to review the evidence in detail. It suffices to say after a consideration of all the evidence in the record, that it is my view that there is substantial evidence supporting the findings of the court; that the judgment is not clearly erroneous; and that it should be affirmed. Fed.Rules Civ. Proc. rule 52(a), 28 U.S.C.A.; Van Dreal v. Van Dreal, 10 Cir., 214 F.2d 715; Payne v. Pray, 10 Cir., 173 F.2d 149; Wyoming Railway Co. v. Herrington, 10 Cir., 163 F.2d 1004.